UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
Houston, Texas

| | | |
|---|---|---|
| MICHAEL A. EKIZIAN, M.D. | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10CV4627 |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| HEALTH SCIENCE CENTER AT | § | |
| HOUSTON, THE UNIVERSITY OF | § | |
| TEXAS SYSTEM MEDICAL | § | |
| FOUNDATION, INC. AND MARK A. | § | |
| FARNIE, M.D., | § | |
| *Defendants.* | § | JURY TRIAL REQUESTED |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATED DISTRICT COURT JUDGE:

Plaintiff, Michael A. Ekizian, M.D. ("Ekizian"), appearing pro se, files this original complaint against Defendants, The University of Texas Health Science Center at Houston, The University of Texas System Medical Foundation, Inc. (collectively "UTHSC"), and Mark A. Farnie, M.D., and would show as follows:

## I. STATEMENT OF THE CASE

1. This is an employment discrimination case, denial of due process and equal protection, and breach of contract complaint filed by Plaintiff, a former Resident Physician in the Internal Medicine Program at The University of Texas Medical School at Houston, a component school of The University of Texas Health Science Center at Houston. Plaintiff files this case against his former employer

and Residency Program Director asserting wrongful termination and disparate treatment based on disability discrimination and retaliation, denial of Federal and State constitutional protections relating to the dismissal hearing and breach of contract following his dismissal from UTHSC's Internal Medical Residency Program approximately ten months short of completion of his residency training.

## II.  STATUTORY AUTHORITY

2.  Ekizian files suit pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. δ 12101 et seq., Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. δ 1977, 1981, et seq., the Americans with Disabilities Act Amendments of 2008 (Pub. L. 110-325), the Fourteenth Amendment of the United States Constitution prohibiting the denial of due process and equal protection and ancillary state law claims pursuant to the due process clause of the Texas Constitution, Article 1 and breach of contract.

## III.  CONDITIONS PRECEDENT MET

3.  Following Plaintiff's termination and appeal of his termination from the UTHSC residency program and his employment with UTSMF, Plaintiff filed original and amended charges of disability discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division on or about December 15, 2008 (disability) and April 23, 2010 (disability and retaliation). *Exhibit 1, Ekizian Charge of Discrimination dated December 15, 2008; Exhibit 2, Ekizian Charge of Discrimination dated April 23, 2010.*

4.  The EEOC issued a Notice of Right to Sue to Plaintiff on or about August 27, 2010. *Exhibit 3, EEOC Notice of Right to Sue.* Plaintiff appealed his termination and exhausted all administrative remedies, obtained a notice of his right to sue and timely flied this complaint, and has therefore fulfilled all conditions precedent to suit.

## IV.   PARTIES

5.  Plaintiff, Michael Ekizian, is a resident of Harris County, Texas.

6.  Defendant, The University of Texas Health Science Center at Houston is a medical institution created by the State of Texas, and may be served by serving its President, Larry R. Kaiser, M.D. at The University of Texas Health Science Center at Houston, 7000 Fannin, Suite 107, Houston, Texas 77030.

7.  Defendant, The University of Texas System Medical Foundation, Inc., is reportedly a not-for-profit corporation that performs administrative functions for The University of Texas Medical School at Houston on behalf of its residents, which in turn is a part of The University of Texas Health Science Center at Houston. Defendant may be served by serving Dr. Giuseppe N. Colasurdo, Dean, The University of Texas Medical School at Houston, 6431 Fannin, MSB G.150, and Houston, Texas 77030.

8.  Defendant, Mark A. Farnie, may be served by serving him at The University of Texas Medical School at Houston, 6431 Fannin Street, MSB 1.126, Houston, Texas 77030.

## V. VENUE

9. Venue of this lawsuit is proper in Harris County, Texas pursuant to 28 U.S.C. § 1391(b) where Defendants offices are located, all parties reside and where a substantial part of the events or omissions giving rise to the claim occurred.

## VI. JURISDICTION

10. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 (federal question) based on the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1977, 1981, et seq., the Americans with Disabilities Act Amendments of 2008 (Pub. L. 110-325), the Fourteenth Amendment of the United States Constitution prohibiting the denial of due process and equal protection and ancillary state law claims pursuant to the Texas Constitution, Article 1 and breach of contract. Defendants are covered entities as that term is understood under the Americans with Disabilities Act, Title VII, and related statutory authority.

## VII. FACTS

11. In April, 2005, Dr. Michael Ekizian, a graduate physician, began a medical observorship at UTHSC-Houston in the Internal Medicine Program under the direction of Dr. Mark Farnie, the Program Director for the UTHSC Internal Medicine Program. Dr. Farnie observed Dr. Ekizian's performance as a physician and was so impressed, he offered Plaintiff a position as a PGY-1 or first year resident. In explaining his decision to the Texas Medical Board ("TMB"), Dr. Farnie observed concerning Dr. Ekizian:

> I have known Dr. Ekizian for almost a year and am familiar with the events in his past. He nonetheless strikes me as a bright, dedicated individual who seems to be functioning very well. I have Dr. Ekizian following me on the inpatient and outpatient arenas functioning like a senior medical student. He does as well if not better than many. I was so impressed with him I offered him a position in our residency program because I felt he would and could do well. ...

***Exhibit 4,*** Dr. Farnie's February 9, 2006 letter.

12. During the observorship, Dr. Ekizian applied for a Physician-in-Training ("PIT) permit. Plaintiff disclosed to the Texas Medical Board ("TMB") that he had a history of mental disability. After review, the TMB committee recommended that Dr. Ekizian be granted a Texas PIT permit with certain terms and condition. Some of the conditions included providing a copy of the agreed order to Dr. Farnie and requiring Dr. Farnie to provide a report to the Board at least twice each year regarding Plaintiff's status and progress in the residency program.

13. The TMB also ordered the following accommodations:

> [Dr. Ekizian] shall be closely monitored by his training program. All faculty members who supervise him should be informed of his history of psychosis. The Program Director of the training program shall immediately notify the Board if there are any significant signs or symptoms of serious mental illness and [Dr. Ekizian] should be immediately removed from clinical responsibilities. If removed, [Dr. Ekizian] shall not return to clinical responsibilities until he is capable of safely practicing medicine.

14. Dr. Ekizian began the three year Internal Medicine Residency at UTHSC in May, 2006, and complied with all terms and conditions of the TMB's order, including providing UTHSC's Program Director with a copy of the agreed order thus informing Defendants of his mental disability and his need for accommodations (closer monitoring, disclosure of his mental disability to supervising faculty

5

members, monitoring of his health condition for referral to the Board, regular status reports, notification to the Board, etc.).

15. During the course of his employment and training, Defendants complied with some but not all of the TMB's conditions. Defendant Farnie sent the TMB regular reports regarding Ekizian's status and progress in the residency program and those reports were uniformly positive. Defendants, however, did not advise the other faculty members who supervised Dr. Ekizian about his mental disability or provide closer monitoring.

16. Dr. Ekizian performed well in his clinical rotations and received regular, monthly assessments (customary for any resident). Those assessments reported satisfactory to superior performance by Dr. Ekizian over the next two years. In October, 2006, Dr. Farnie reported to the Board that "his [Dr. Ekizian's] evaluations have been superior in every regard" and "we are very pleased with his performance". ***Exhibit 5,*** *October 13, 2006 Report to the Board.* On October 9, 2007, the Program Director reported that "Dr. Ekizian has had no academic or disciplinary problems and is performing in an exemplary fashion." ***Exhibit 6,*** *October 9, 2007 Report to the Board.*

17. On April 23, 2008, Defendants' program director wrote "his [Dr. Ekizian's] contract was renewed and he is still on track to complete his two years of residency training on April 30, 2009. ***Exhibit 7,*** *April 23, 2008 Report to the Board.*

18. In May, 2008, Dr. Ekizian was reported as having performed poorly in his rotation and his attending physician, co-resident and intern submitted negative

evaluations to the Program Director. The negative evaluations did not focus on a lack of academic or medical knowledge but rather on a perceived failure to fulfill his responsibilities in terms of attending personally to certain patient care situations as opposed to delegating the tasks to less skilled co-workers and communicating with co-workers. The attending faculty member, although critical of Plaintiff's performance shortcomings during that rotation, did not fail Plaintiff or recommend that he repeat the rotation.

19. Dr. Farnie met with Dr. Ekizian on June 13, 2008 regarding the May, 2008 negative performance review. *Exhibit 8, Dr. Farnie Letter to File on Dr. Michael Ekizian.* Dr. Farnie focused on Dr. Ekizian's motivation and interest level in internal medicine rather than questions concerning his skill and competence. Dr. Farnie questioned whether internal medicine was the proper residency for Dr. Ekizian and indicated his willingness to assist Dr. Ekizian to enter alternative residencies at UTHSC. Dr. Ekizian conceded some concerns with his choice of internal medicine but at no time stated he wished to leave the program nor was there any discussion regarding dismissal, remediation or disciplinary action. *Id.*

20. On June 17, 2008, much to Dr. Ekizian's shock, Dr. Farnie sent Dr. Ekizian a letter of dismissal from the medical school citing for the first time issues of academic performance and competency. **Exhibit 9,** *June 8, 2008 Notice of Dismissal.*

21. The UTHSC's 2008-2009 Graduate Medical Education Resident Handbook, section C4, provides that the program director should provide the resident with written notice of an intent not to promote no later than four months prior to the

end of the resident' current appointment. *Exhibit 10, GME Resident Handbook Excerpts, pg. 4.* In contrast, Defendants gave Dr. Ekizian approximately two weeks notice of his dismissal after never having previously providing him with even a letter of warning, let alone notice of suspension, probation, order for a repeat of the rotation or a portion of the training year, remedial training in the affected area of performance, or any of the customary forms of remedial support routinely offered to non-disabled residents.

22. Under the procedures of the GME Resident Manual, if the program director has notified the resident physician about his/her unsatisfactory performance, including professional behavior, offered advise and guidance, and if appropriate, taken corrective action, and the Resident Physician's performance continues to be unsatisfactory, it is only then that the Program Director may take appropriate academic corrective action, including but not limited to, remedial assignments, letters of warning, probation, suspension, non-promotion, non-reappointment, or dismissal from the program. *Id.* Plaintiff was never offered or given the opportunity to take any specified corrective action to address the perceived issues of attendance and communication skills.

23. Dr. Ekizian promptly appealed his dismissal, however, Defendants' directed his appeal to an academic review committee, not a non-academic or disciplinary action committee. Under an academic review, the only issues for review were the issue of notice and opportunity to correct any academic deficiencies. *Exhibit 9.* Under an academic review, there were minimal procedural safeguards and protections in place, and limited opportunity to overturn an adverse decision.

24. Under the GME Resident manual procedures, if Dr. Ekizian's alleged attendance and communication issues had been reviewed in the context of a non-academic or disciplinary action, Plaintiff would have been entitled to an arbitration panel, with one panel member consisting of one Resident Physician, ten days notice of the hearing date, written notice of the allegations, a list of witnesses, a summary of each witnesses' testimony, a copy of all documents to be offered, the right to appear and question witnesses, the burden of proof placed on the UTHSC rather than the Resident and a recording of the hearing. *Exhibit 10, p. 13.*

25. Dr. Ekizian was not afforded *any* of these procedural protections even though the chief allegation against him following the negative reviews focused more on his attendance, communication and delegation to less qualified individuals (a non-academic matter) rather than on competence (an academic issue).

26. Even in the academic hearing, and despite a complete lack of documentary evidence to support the necessary finding that Dr. Ekizan had been given an opportunity for remediation, the committee upheld the dismissal. Dr. Ekizian exhausted his administrative remedies by appealing to the dean of the medical school who likewise upheld Dr. Ekizian's dismissal.

27. After filing a charge of disability discrimination with the EEOC and TWC, Civil Rights Division, Dr. Ekizian attempted to mitigate his losses by seeking alternate residencies. Defendants responded by refusing and/or delaying submission of information and forms necessary for Plaintiff's ability to obtain alternate employment and training as a Resident, and/or upon information and belief, submitted such negative reviews and comments about him after he filed his

charge of discrimination, that Defendants effectively precluded Dr. Ekizian's ability to obtain an alternate residency within or outside of UTHSC. This lawsuit follows.

## VIII. CAUSES OF ACTION

### A. DISABILITY DISCRIMINATION-42 U.S.C. § 12101, et seq.

28. Plaintiff incorporates all previous paragraphs as if fully set forth herein. Plaintiff is a qualified individual who was disabled at all relevant times as that term is defined under the American's with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1977, 1981, et seq., and the Americans with Disabilities Act Amendments of 2008 (Pub. L. 110-325). Plaintiff suffers from a mental disability requiring regular medication and medical attention.

29. Defendants knew about Dr. Ekizian's disability and the accommodations established for him pursuant to the order of the Texas Medical Board. Defendants failed to comply with those orders and accommodations, including but not limited to failing to monitor his condition and failing to notify all supervising faculty members about his mental disability. Defendants compliance with the reasonable accommodations would have alerted Defendants that Dr. Ekizian's mental disability was impacting his motivation, energy level, attendance and communication ability instead of related to any intentional act or lack of interest.

30. Compared to similarly situated non-disabled Residents, Plaintiff was treated in a disparate manner in the following ways, including, but not limited to:

   a. Lack of notice of performance issues;

    b.    Lack of notice of the severity of perceived performance issues sufficient to advise Plaintiff that he faced dismissal;

    c.    Lack of notice of corrective action that would have allowed Dr. Ekizian to conform with or seek assistance to conform his conduct to improve his performance;

    d.    Lack of opportunity to remediate any perceived performance issues, including but not limited to, repeating a rotation, repeating a portion of the training, remedial education and training, communications training and support, and similar remedial options offered to non-disabled Residents;

    e.    Lack of opportunity for reinstatement;

    f.    Lack of opportunity to transfer to an alternate residency program while remaining in the internal medicine program.

31. Defendant treated Plaintiff more harshly than non-disabled Residents by denying Dr. Ekizian an opportunity to correct and/or remediate any alleged performance issues.

32. Defendant failed to closely monitor, investigate and/or refer Dr. Ekizian for evaluation to determine whether his alleged motivational, attendance and/or communication issues stemmed from his mental disability rather than any intentional performance issues or misconduct.

33. Plaintiff seeks damages in the form of back pay, front pay, reinstatement, compensatory and liquidated damages, exemplary damages, mental anguish, lost past, present and future income, lost past, present and future benefits, costs, pre-judgment and post-judgment interest, injunctive relief permitting his

reinstatement pending a re-hearing, and all other relief to which he may show himself entitled.

**B.** **RETALIATION-TITLE VII, 42 U.S.C. δ 2000e, et seq.**

34. Plaintiff incorporates all previous paragraphs as if fully set forth herein. Plaintiff asserts that Defendants engaged in acts of retaliation following Plaintiff's complaints of disability discrimination and the filing of his charge of disability discrimination. The retaliatory acts, include, but are not limited to:

   a. Upon information and belief, Defendants provided a disparaging and retaliatory letter of recommendation to the National Resident Matching Program thus preventing any interviews or matches that would enable Plaintiff to enter and complete another residency;

   b. Defendants failed and/or delayed completion and provision of forms/letters necessary for Plaintiff to obtain a license to practice medicine in Texas;

   c. Defendants refused to reinstate Plaintiff or provide any form of corrective action and/or remediation that would have allowed Plaintiff to resume his residency employment and training.

35. Plaintiff seeks damages in the form of back pay, front pay, reinstatement, compensatory and liquidated damages, exemplary damages, mental anguish, lost past, present and future income, lost past, present and future benefits, costs, pre-judgment and post-judgment interest, injunctive relief permitting his reinstatement pending a re-hearing to complete his residency program, and all other relief to which he may show himself entitled.

C. **DENIAL OF DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND THE TEXAS CONSTITUTION, ART. 1**

36. Plaintiff incorporates all previous paragraphs as if fully set forth herein. Dr. Ekizian possesses a property interest in his employment and residency training and was entitled to due process and equal protection prior to any seizure or taking of that property interest. U.S. Const. 14th Amendment. Section 19 of the Texas Constitution provides that "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

37. Defendants failed to provide Plaintiff with sufficient notice and opportunity to be heard consistent with the notions of fair play and fundamental fairness pursuant to the most basic of State and Federal constitutional protections. Courts have imposed a sliding scale of due process that must be afforded a student who is punished for disciplinary reasons. *Boykins v. Fairfield Bd. of Education*, 492 F.2d 697, 701 (5th Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed. 2d 438 (1975).

38. If the punishment is not de minimis, then the due process afforded the student must be more closely scrutinized by a reviewing court for arbitrariness. *Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1974). In this instance, Defendants actions in accusing Dr. Ekizian of performance issues, failing to provide him with sufficient notice and opportunity to address and defend against the accusations asserted against him, and dismissal from the Internal Medicine Residency Program and his employment, was the most harsh