**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHAEL A. EKIZIAN, M.D. | § | |
|       Plaintiff | § | |
| | § | |
| v. | § | C.A. No. 4:10-CV-04627 |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON, | § | |
| THE UNIVERSITY OF TEXAS SYSTEM | § | |
| MEDICAL FOUNDATION, INC. AND | § | |
| MARK A. FARNIE, M.D. | § | |
|       Defendants | § | |

---

## DEFENDANTS' MOTION TO DISMISS

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Litigation

DAVID MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

DARREN G. GIBSON
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorney General
Office of the Attorney General
General Litigation Division -019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

***ATTORNEYS FOR DEFENDANTS***

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.    STATEMENT OF THE ISSUES ..................................................................... 3

III.   SUMMARY OF THE ARGUMENT ............................................................... 3

IV.    ARGUMENT .................................................................................................. 4

       A.  Plaintiff's Disability Discrimination Claim Is Barred By The Eleventh Amendment. ....... 4

       B.  Plaintiff's Retaliation Claim Likewise Fails. ...................................................... 6

       C.  Plaintiff Cannot State A Claim For Damages Based On Alleged Constitutional
           Violations. ................................................................................................ 7

       D.  Any Section 1983 Claim Against Dr. Farnie Would Be Futile. ........................... 8

       E.  Plaintiff Fails To State A Claim For Injunctive Relief. .................................... 10

       F.  Plaintiff's Breach Of Contract Claim Is Barred By Sovereign Immunity. ........ 14

V.     CONCLUSION ............................................................................................. 15

# TABLEOF AUTHORITIES

## CASES

*ABC Arbitrage Pls. Group v. Tchuruk,*
   291 F.3d 336 (5th Cir. 2002) ........................................................................3

*Bd. of Curators of the Univ. of Mo. v. Horowitz,*
   435 U.S. 78 (1978).......................................................................4, 11, 12,13

*Beaumont v. Bouillion,*
   896 S.W.2d 143 (Tex. 1995).......................................................................4, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................3, 13

*Benton v. U.S.,*
   960 F.2d 19 (5th Cir. 1992) ...........................................................................3

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
   531 U.S. 356 (2001)............................................................................3, 4, 14

*Bradley v. Phillips Petroleum Co.,*
   527 F. Supp. 2d 661 (S.D. Tex. 2007) ..........................................................8

*Burns-Toole v. Byrne,*
   11 F.3d 1270 (5th Cir. 1994) .........................................................................7

*Ceasar v. Holt,*
   245 Fed. Appx. 396 (5th Cir. 2007).............................................................12

*Cleburne v. Cleburne Living Center, Inc.,*
   473 U.S. 432 (1985)......................................................................................14

*Cooper v. United Parcel Service, Inc.,*
   368 Fed.Appx. 469 (5th Cir. 2010)................................................................5

*Daniels v. City of Arlington, Tex.,*
   246 F.3d 500 (5th Cir. 2001) .........................................................................8

*Davis v. Mann,*
   882 F.2d 967 (5th Cir. 1989) .......................................................................12

*Demshki v. Monteith*,
255 F.3d 986 (9th Cir. 2001) ........................................................................3, 6

*Duzich v. Advantage Finance Corp.*,
395 F.3d 527 (5th Cir. 2004) ...............................................................................8

*EEOC v. Agro Distrib. LLC*,
555 F.3d 462 (5th Cir. 2009) ...............................................................................5

*Emmons v. City Univ. of N.Y.*,
715 F. Supp. 2d 394 (E.D.N.Y. 2010) .................................................................7

*Federal Sign v. Texas S. Univ.*,
951 S.W.2d 401 (Tex. 1997)........................................................................14, 15

*Gen. Servs. Com'n v. Little-Tex Insulation Co., Inc.*,
39 S.W.3d 591 (Tex. 2001)................................................................................14

*Goss v. Lopez*,
419 U.S. 565 (1975).....................................................................................11, 13

*Hafer v. Melo*,
502 U.S. 21 (1991).................................................................................................5

*Harris v. Angelina County, Tex.*,
31 F.3d 331 (5th Cir. 1994) ...............................................................................10

*Heller v. Doe*,
509 U.S. 312 (1993).............................................................................................14

*Hughes v. Tobacco Inst., Inc.*,
278 F.3d 417 (5th Cir. 2001) ...............................................................................3

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) ...............................................................................9

*Jones v. Bock*,
549 U.S. 199 (2007).............................................................................................9

*Kacher v. Houston Comm. College System*,
974 F.Supp. 615 (S.D. Tex. 1997) ......................................................................5

*Karam v. Del. Div. of Serv. for Children, Youth and Their Families*,
2010 WL 5343182 (D. Del. Dec. 15, 2010)........................................................7

*Kurth v. Gonzales*,
  469 F.Supp. 2d 415 (E.D. Tex. 2006) ...................................................................6

*Lavellee v. Listi*,
  611 F.2d 1129 (5th Cir. 1980) ...........................................................................9

*Mason v. Potter*,
  2010 WL 4791497 (S.D. Tex. Nov. 15, 2010) ...........................................6

*Nagm v. Univ. of Tex. Health Science Center at Houston*,
  2005 WL 1185801 (S.D. Tex. May 11, 2005) ...........................................4

*Nelson v. Univ. of Tex. at Dallas*,
  535 F.3d 318 (5th Cir. 2008) ...........................................................................5

*Norris v. Housing Auth. of City of Galveston*,
  980 F.Supp. 885 (S.D. Tex. 1997) .............................................................15

*Perez v. Region 20 Educ. Service Center*,
  307 F.3d 318 (5th Cir. 2002) ...........................................................................4

*Planned Parenthood of Houston & S.E. Tex. v. Sanchez*,
  480 F.3d 734 (5th Cir. 2007) .............................................................3, 4, 7, 8

*Rodriguez v. Holmes*,
  963 F.2d 799 (5th Cir. 1992) ...........................................................................9

*Rubin v. O'Koren*,
  621 F.2d 114 (5th Cir. 1980) ...........................................................................9

*Saldivar v. Tex. Dept. of Assist. and Rehab. Servs.*,
  2009 WL 3386889 (S.D. Tex. Oct. 13, 2009) ............................................10

*Shabazz v. Tex. Youth Com'n*,
  300 F. Supp. 2d 467 (N.D. Tex. 2003) .......................................................7

*Shaboon v. Duncan*,
  252 F.3d 722 (5th Cir. 2001) .........................................................................12

*St. Paul Mercury Ins. Co. v. Williamson*,
  224 F.3d 425 (5th Cir. 2000) ...........................................................................3

*Stotter v. Univ. of Tex. San Antonio*,
  508 F.3d 812 (5th Cir. 2007) .......................................................................7, 8

*Stanley v. Foster,*
   464 F.3d 565 (5th Cir. 2006) ....................................................................9

*Stripling v. Jordan Prod. Co.,*
   234 F.3d 863 (5th Cir. 2000) ....................................................................8

*Tex. Nat. Res. Cons. Comm'n v. IT-Davy,*
   74 S.W.3d 849 (Tex. 2002)................................................................4, 15

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill,*
   561 F.3d 277 (5th Cir. 2009) ....................................................................8

*Trigo v. TDCJ-CID Officials,*
   2010 WL 3359481 (S.D. Tex. Aug. 24, 2010)........................................10

*U.S. v. Tex. Tech Univ.,*
   171 F.3d 279 (5th Cir. 1999) ....................................................................4

*Wagstaff v. U.S. Dep't Educ.,*
   509 F.3d 661 (5th Cir. 2007) ....................................................................4

*Wallace v. Kato,*
   549 U.S. 384 (2007)..................................................................................9

*Wheeler v. Miller,*
   168 F.3d 241 (5th Cir. 1999) ..................................................................12

*Whitt v. Stephens Co.,*
   529 F.3d 278 (5th Cir. 2008) ..............................................................4, 10

*Will v. Mich. Dept. of State Police,*
   491 U.S. 58 (1989)..............................................................................7, 10

*Williams v. Treen,*
   671 F.2d 892 (5th Cir. 1982) ..................................................................11

## RULES

FED. R. CIV. P. 12(b)(1)................................................................................3

FED. R. CIV. P. 12(b)(6)................................................................................3

## STATUTES

42 U.S.C. § 1983 ............................................................................................. 7

42 U.S.C. § 12101 ............................................................................................ 2

42 U.S.C. § 12111 ............................................................................................ 5

42 U.S.C. § 12112(a) ...................................................................................... 5, 6

42 U.S.C. § 12203 ............................................................................................ 6

42 U.S.C. § 2000e ............................................................................................ 2

42 U.S.C. § 2000e-2(a)(1) ................................................................................. 6

42 U.S.C. § 2000e-3(a) ..................................................................................... 6

Tex. Civ. Prac. & Rem. Code § 16.003(a) ......................................................... 9

Tex. Educ. Code § 65.02(a)(9)(A) ..................................................................... 4

## OTHER AUTHORITIES

Univ. of Tex. Sys., Rules and Regs. of the Bd. of Regents
   Rule 60304 (http://utsystem.edu/BOR/rules.htm) ....................................... 5

TO THE HONORABLE LYNN N. HUGHES:

Defendant The University of Texas Health Science Center at Houston ("UTHealth"), The University of Texas System Medical Foundation, Inc. (the "Foundation"), and Mark A. Farnie, M.D., by and through their undersigned attorney, file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and in support thereof, respectfully show the Court as follows:

## I.    NATURE AND STAGE OF PROCEEDINGS

This case is about the dismissal of Plaintiff Michael Ekizian from UTHealth's Internal Medicine Residency Program.  Plaintiff alleges that he began the three-year program in May, 2006, and that, at the time, UTHealth and Dr. Farnie were aware of his "history of mental disability." (Orig. Compl. ¶¶ 12-14.) In addition, Plaintiff alleges that the Texas Medical Board (the "Board") required that Plaintiff be "closely monitored" during his training and that all supervising faculty members "be informed of his history of psychosis."  (*Id.* ¶ 13.)  The Board further requested that Dr. Farnie "provide a report to the Board at least twice each year regarding Plaintiff's status and progress in the residency program."  (*Id.* ¶ 12.)  The Board purportedly directed Dr. Farnie to "immediately notify the Board if there are any significant signs or symptoms of serious mental illness and [Dr. Ekizian] should be immediately removed from clinical responsibilities."  (*Id.* ¶ 13.)

Plaintiff alleges that he performed "performed well" in his clinical rotations for the first two years of the program.  (*Id.* ¶¶ 15-16.)  Plaintiff then purportedly received a poor evaluation from the attending physician, co-resident and intern for his rotation in May, 2008, based on his "failure to fulfill his responsibilities in terms of attending personally to certain patient care situations as opposed to delegating tasks to less skilled co-workers and communicating with co-workers."  (*Id.* ¶ 18.)  Plaintiff then met with Dr. Farnie on June 13, 2008, at which time Dr. Farnie allegedly discussed Plaintiff's "motivation and interest level" and communicated concerns about Plaintiff's

"choice of internal medicine." (*Id.* ¶ 19.) On June 17, 2008, Dr. Farnie sent Plaintiff a letter of dismissal, which stated, "Based on your performance, the [Departmental Education] Committee determined you do not have the clinical skills necessary to function effectively in the Internal Medicine Residency Training Program, and your skills and abilities are well below the level required for an Internal Medicine Resident." (*Id.* ¶ 20 & Exh. 9.) Plaintiff's dismissal was effective June 30, 2008. (*Id.*)

Plaintiff then appealed his dismissal, but claims that Defendants improperly directed his appeal to an "academic review committee," rather than a "disciplinary action committee," and that the academic review process contained "minimal procedural safeguards and protections in place, and limited opportunity to overturn an adverse decision." (*Id.* ¶ 23.) Both the "academic review committee" and the dean of the medical school denied Plaintiff's appeal and upheld the dismissal. (*Id.* ¶ 26.)

Based on these allegations, Plaintiff asserts four separate causes of action: (1) disability discrimination under Title I of the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("Title I of the ADA"); (2) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (3) denial of due process and equal protection under the Fourteenth Amendment of the United States Constitution and Article 1 of the Texas Constitution; and (4) breach of contract. (*Id.* ¶¶ 28-45.) Because Plaintiff appears to be asserting all four claims against each Defendant, this motion will address each of Plaintiff's claims as to each Defendant. In addition, Plaintiff does not state whether he is naming Dr. Farnie in his individual or official capacity. Thus, this motion will address each of Plaintiff's claims assuming Dr. Farnie was named in both his individual and official capacities.

## II.    STATEMENT OF THE ISSUES

The Federal Rules of Civil Procedure permit dismissal of a lawsuit on jurisdictional grounds or based on plaintiff's failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(1), 12(b)(6).  Dismissal is appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002); *see also Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992) (applying 12(b)(6) standard to motions under 12(b)(1)).  Thus, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir. 2000)).  While the Court must accept the specific factual allegations in the pleadings as true, *Hughes*, 278 F.3d at 420, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Therefore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6)." *ABC Arbitrage*, 291 F.3d at 348.

## III.    SUMMARY OF THE ARGUMENT

Defendants move for dismissal of each of Plaintiff's claims on numerous grounds.  First, Plaintiff's disability discrimination claim under Title I of the ADA is barred by Defendants' sovereign immunity and the Eleventh Amendment.  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001).  Second, Plaintiff's Title VII retaliation claim is misnamed, and that claim is likewise barred by the Eleventh Amendment.  *See Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001).  Third, Plaintiff cannot assert constitutional claims for damages directly and may only seek relief for constitutional violations through 42 U.S.C. § 1983 ("Section 1983").  *See Planned*

*Parenthood of Houston & S.E. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007); *Beaumont v. Bouillon*, 896 S.W.2d 143, 149 (Tex. 1995). Fourth, it would be futile for Plaintiff to attempt to assert such claims against Dr. Farnie, as they would be time barred. *See Whitt v. Stephens Co.*, 529 F.3d 278, 284 (5th Cir. 2008). Fifth, Plaintiff has failed to state a due process or equal protection claim that would support injunctive relief. *See Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86-90 (1978); *Garrett*, 531 U.S. at 366-67. Finally, Plaintiff Plaintiff's breach of contract claim is also barred by Defendants' sovereign immunity. *See Tex. Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

## IV.   ARGUMENT

A.   <u>Plaintiff's Disability Discrimination Claim Is Barred By The Eleventh Amendment.</u>

It is well-settled that Title I of the ADA did not validly abrogate state sovereign immunity, and that claims against state entities under Title I are therefore barred by the Eleventh Amendment. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 331-32 (5th Cir. 2002) (dismissing ADA Title I claims against state entity on sovereign immunity grounds). Furthermore, Eleventh Amendment immunity deprives courts of subject matter jurisdiction. *See Wagstaff v. U.S. Dep't Educ.*, 509 F.3d 661, 664 (5th Cir. 2007) (per curiam).

Both UTHealth and the Foundation are state institutions protected by sovereign immunity and the Eleventh Amendment. *See U.S. v. Tex. Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999); *Nagm v. Univ. of Tex. Health Science Center at Houston*, No. Civ.A. H-04-2132, 2005 WL 1185801, at *1 (S.D. Tex. May 11, 2005) ("Defendants The University of Texas Health Science Center at Houston [] and The University of Texas Medical Foundation [] are both agencies of the state of Texas"); TEX. EDUC. CODE § 65.02(a)(9)(A) (law establishing The University of Texas Medical

School at Houston as part of The University of Texas System); UNIV. OF TEX. SYS., RULES AND REGS. OF THE BD. OF REGENTS, Rule 60304 (http://utsystem.edu/BOR/rules.htm ) (establishing the Foundation as an internal nonprofit corporation managed pursuant to the charter and bylaws of the UT System Board of Regents).  Similarly, claims against Dr. Farnie in his official capacity are considered claims against the state subject to the Eleventh Amendment.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008) ("Because Nelson sued Daniel in his official capacity as head of UTD, Nelson's suit is treated as one against the State of Texas which, absent an exception to immunity, is barred by the Eleventh Amendment.").

Because Title I of the ADA does not validly abrogate state sovereign immunity, Plaintiff's claim for disability discrimination is barred by the Eleventh Amendment.

Furthermore, Plaintiff cannot bring his ADA Title I claim against Dr. Farnie in his individual capacity.  The prohibitions against disability discrimination found in Title I of the ADA apply only to a "covered entity," which is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §§ 12111, 12112(a).  Thus, Dr. Farnie (who was not Plaintiff's employer) cannot be liable under Title I of the ADA in his individual capacity.  *See Kacher v. Houston Comm. College System*, 974 F.Supp. 615, 619 (S.D. Tex. 1997) (holding that individuals acting in their individual capacity who do not meet statutory definition of "employer" cannot be sued under the ADA).[1]

---

[1] Plaintiff appears to be relying on provisions of the ADA as amended by the American with Disabilities Amendments Act of 2008 (the "ADAA").  (Orig. Compl. ¶¶ 2, 28.)  Those amendments became effective on January 1, 2009, and do not apply retroactively to conduct prior to that date.  *See EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n. 8 (5th Cir.2009) ("Congress recently enacted the ADA Amendments Act of 2008 ..., but these changes do not apply retroactively."); *Cooper v. United Parcel Service, Inc.*, 368 Fed.Appx. 469, 475 n.5 (5th Cir. 2010) (applying pre-amendment ADA to claims based on discharge in 2008).  Because this case involves conduct prior to January 1, 2009, the ADAA does not apply.

B.     Plaintiff's Retaliation Claim Likewise Fails.

Plaintiff (incorrectly) relies on Title VII as the statutory basis for his retaliation claim.  Title VII prohibits employers from discriminating against employees on the basis of, among other things, sex or gender (but not disability), and it also prohibits retaliation against employees who have opposed such discrimination or made a related charge.  42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Title I of the ADA, on the other hand, precludes discrimination against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a).   Title V of the ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge … under this chapter."  42 U.S.C. § 12203.

In this case, Plaintiff alleges that he was subject to retaliation "following [his] complaints of disability discrimination and the filing of his charge of disability discrimination."  (Orig. Compl. ¶ 34.)  Plaintiff incorrectly cites Title VII (rather than Title V of the ADA) as the basis for his claim. Not surprisingly, Plaintiff fails to state a retaliation claim under Title VII, as he has neither opposed conduct prohibited by Title VII nor filed any charge under that statute.  (*Id.* ¶ 34 & Exhs. 1 & 2.) *See Mason v. Potter*, 2010 WL 4791497, at *2 (S.D. Tex. Nov. 15, 2010) (dismissing Title VII claim premised upon disability discrimination); *Kurth v. Gonzales,* 469 F.Supp. 2d 415, 425 (E.D. Tex. 2006) (dismissing Title VII discrimination and retaliation claim premised upon alleged disability).

Even assuming that Plaintiff had asserted his retaliation claim under Title V of the ADA, that claim would likewise fail.  Employment retaliation claims under Title V of the ADA, like disability discrimination claims under Title I, are barred by sovereign immunity and the Eleventh Amendment. *See Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001) (holding Eleventh Amendment bars ADA retaliation claim against state entity where claim predicated on alleged violations of Title I );

*Shabazz v. Tex. Youth Com'n*, 300 F.Supp. 2d 467, 473 (N.D. Tex. 2003) (applying *Garrett* to bar ADA retaliation claims); *Karam v. Del. Div. of Serv. for Children, Youth and Their Families*, 2010 WL 5343182, at *5 (D. Del. Dec. 15, 2010) ("Defendant is immune from Plaintiff's Title V claim because it is premised on Defendant's alleged violation of Title I."); *Emmons v. City Univ. of N.Y.*, 715 F.Supp. 2d 394, 408 (E.D.N.Y. 2010) (holding ADA retaliation claim barred by Eleventh Amendment).  Thus, Plaintiff's retaliation claim likewise should be dismissed.

C.  <u>Plaintiff Cannot State A Claim For Damages Based On Alleged Constitutional Violations.</u>

Plaintiff's claim for damages based on alleged constitutional violations cannot be asserted directly against the Defendants.  It is well established that there is no direct cause of action for alleged violations of the United States Constitution.  Rather, the exclusive vehicle for such claims is an action under 42 U.S.C. § 1983 ("Section 1983") against a "person" acting under the color of state law.  *See Planned Parenthood of Houston & S.E. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007) ("Section 1983 is the proper vehicle for a claim alleging that a state official has violated the Plaintiffs' rights under the Fourteenth Amendment."); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) ("The district judge properly dismissed [plaintiff's] First and Fourteenth Amendment claims as well, citing the rule that the proper vehicle for these allegations is § 1983.").  Even if Plaintiff sought leave to add a Section 1983 claim, Plaintiff cannot bring such a claim for damages against UTHealth, the Foundation or Dr. Farnie in his official capacity.  A state agency, including a state university, is not a "person" for the purposes of Section 1983 liability, and therefore not a proper defendant for such claims.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, (1989); *Stotter*, 508 F.3d at 821

("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983.").

Similarly, it is well settled that Texas law provides no private cause of action for a violation of a right guaranteed by the Texas Constitution. *Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995); *see also Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001) ("Daniels's civil rights claims under the state constitution are similarly unavailing because tort damages are not recoverable for violations of the Texas Constitution.").

In this case, Plaintiff attempts to assert a claim for damages directly against Defendants based on alleged violations of his rights to due process and equal protection under the Fourteenth Amendment of the U.S. Constitution and the Texas Constitution.   (Orig. Compl. ¶¶ 36-42.) However, Plaintiff cannot bring such a claim against Defendants as state entities either directly or pursuant to Section 1983.  *See Planned Parenthood*, 480 F.3d at 739; *Stotter* , 508 F.3d at 821; *Bouillion*, 896 S.W.2d at 149.

D.      Any Section 1983 Claim Against Dr. Farnie Would Be Futile.

Any attempt by Plaintiff to amend his complaint pursuant to Federal Rule 15 and assert a Section 1983 claim against Dr. Farnie in his individual capacity would be futile.  "Under Rule 15, the courts consider such equitable factors as … futility of amendment.'" *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (quotations omitted).  The Fifth Circuit has equated futility in the context of amended pleadings under Rule 15(a)(2) with failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 531 (5th Cir. 2004) (affirming denial of leave to amend on futility grounds under Rule 12(b)(6) standard); *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 661, 671, 698 (S.D. Tex. 2007) (denying leave to

amend on futility grounds where amended complaint failed to state a claim). Furthermore, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa*, *Inc*., 339 F.3d 359, 366 (5th Cir. 2003); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

Any proposed Section 1983 claims against Dr. Farnie would be time barred and subject to dismissal. Because there is no federal statute of limitations provided for claims brought under Section 1983, the Court borrows the state statute of limitations from the most analogous state law claim, which is the Texas two-year statute of limitations for personal injury claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that statute of limitations for Section 1983 claims "is that which the State provides for personal-injury torts."); *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (two-year statute of limitations applies to Section 1983 actions in Texas); Tex. Civ. Prac. & Rem. Code § 16.003(a). The time at which the claim accrues is a matter of federal law. *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992). Under the Fifth Circuit's "discovery rule," a Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury on which his suit is based. *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980) (citations omitted). Thus, the limitations period begins to run when the plaintiff is or should be aware of the "critical facts that he has been hurt and who has inflicted the injury. . . ." *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980) (quotation marks omitted).

Here, Plaintiff admits that he was dismissed from the Residency Program on June 17, 2008. (Orig. Compl. ¶ 20 & Exh. 9.) Plaintiff received the dismissal letter from Dr. Farnie no later than June 20, 2008. (*Id.*) Thus, any purported claim against Dr. Farnie related to Plaintiff's dismissal

accrued no later than June 20, 2008, with the limitations period expiring on June 20, 2010.  And yet Plaintiff did not file this complaint until November 19, 2010, well after the limitations period expired on any Section 1983 claim.  Thus, it would be futile for Plaintiff to amend his complaint in an attempt to assert such a claim.  *See Whitt v. Stephens Co.*, 529 F.3d 278, 284 (5th Cir. 2008) (denying leave to amend on futility grounds where proposed Section 1983 claims time barred); *Trigo v. TDCJ-CID Officials*, Civ. A. No. H-05-2012, 2010 WL 3359481, at *11 (S.D. Tex. Aug. 24, 2010) (same); *Saldivar v. Tex. Dept. of Assist. and Rehab. Servs.*, Civ. A. No. H-08-1820, 2009 WL 3386889, at *10 (S.D. Tex. Oct. 13, 2009) (same).

E.    Plaintiff Fails To State A Claim For Injunctive Relief.

In addition to monetary damages, Plaintiff seeks injunctive relief in connection with his constitutional claim, including reinstatement into the Residency Program and a new administrative hearing with additional due process and "equal protection safeguards."  (Orig. Compl. ¶ 42.) However, Plaintiff has not properly pleaded his constitutional claim for injunctive relief pursuant to Section 1983.  Moreover, Plaintiff fails to state a claim for violation of his due process or equal protection rights.

The Supreme Court has held that "neither a state nor persons acting in their official capacities are 'persons' under § 1983," though state officials in their official capacities, when sued for injunctive relief, are "persons" under Section 1983.  *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n. 10 (1989).  Thus, to assert a claim for injunctive relief in connection with a constitutional violation, a plaintiff must bring a Section 1983 claim against the appropriate state official in his official capacity.  *See Harris v. Angelina County, Tex.*, 31 F.3d 331, 337-38 (5th Cir. 1994) ("a § 1983 action seeking prospective injunctive relief based on federal constitutional violations may be brought against state officials in their official capacities").  Because Plaintiff fails to invoke Section

1983 anywhere in his complaint, he has failed to state a claim for any federal constitutional violation.

Even if Plaintiff had invoked Section 1983, he fails to state a claim for violation of his due process or equal protection rights under the United States constitution.[2] As to his due process claim, federal courts have long assumed (without deciding) that a disciplinary or academic dismissal from a public college or university affects the student's constitutionally protected interest in continued enrollment. In the seminal case of *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S. Ct. 948 (1978), the Supreme Court was asked to determine whether a former medical student's due process rights had been violated upon her academic dismissal from the medical school of a public university. The *Horowitz* Court assumed, without deciding, that the dismissed plaintiff had a protected interest in continued enrollment and held that, even with that assumption, the student was "awarded at least as much due process as the Fourteenth Amendment requires." *Id.* at 85. The *Horowitz* Court further held that due process does *not* require any formal hearing for university students subject to academic dismissals, but rather requires only that the student receive notice of the academic problems and a "careful and deliberate" dismissal decision by the institution. *Id.* Even in the context of disciplinary dismissals, which are subject to more scrutiny, due process requires at most "'an informal give-and-take' between the student and administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the property context.'" *Id.* at 86 (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)).

Furthermore, the *Horowitz* Court made it clear that the courtroom is not the proper forum to second-guess academic decisions:

---

[2] As to Plaintiff's due process claim under the Texas constitution, Plaintiff may not assert a Section 1983 claim, whether for damages or injunctive relief, for violations of the state law. *See Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982) ("violation of state law alone does not give rise to a cause of action under § 1983.").

> Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement. … Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.
>
> Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing.  … We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship.

*Id.* at 89-90.  Numerous Fifth Circuit opinions have followed *Horowitz* in holding that dismissed students who received notice of their academic problems and some sort of give-and-take reflecting a deliberate decision-making process by the university were afforded all the process they were due. *See, e.g., Ceasar v. Holt*, 245 Fed. Appx. 396, 397 (5th Cir. 2007); *Shaboon v. Duncan*, 252 F.3d 722, 730-32 (5th Cir. 2001) (holding dismissed medical resident received all process that was due); *Wheeler v. Miller*, 168 F.3d 241, 248-49 (5th Cir. 1999); *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (holding dismissed dental resident received all process due).

Here, it is clear from the allegations in the complaint that Plaintiff was dismissed for academic reasons.  Plaintiff alleges that he "was reported as having performed poorly in his rotation" based on an "a perceived failure to fulfill his responsibilities in terms of attending personally to certain patient care situations … and communicating with co-workers." (Orig. Compl. ¶ 18.)  In his dismissal letter, Plaintiff was informed that the Departmental Education Committee "determined [Plaintiff] did not have the clinical skills necessary to function effectively … and [his] skills and abilities are well below the level required for an Internal Medicine Resident." (Orig. Compl. Exh. 9.)  The complaint makes no reference to any disciplinary issues, such as "unethical conduct, scholastic

dishonesty, [or] theft." (*Id.* Exh. 10 at 13, § Q.2.)  Rather, it is clear that Plaintiff's dismissal "rested on the academic judgment of school officials that [he] did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal." *Horowitz*, 435 U.S. at 89-90.

Moreover, Plaintiff received all the process he was due.  Plaintiff met with Dr. Farnie on June 13, 2008, to discuss his performance issues and the negative reviews from his prior rotation. (Orig. Compl. ¶ 19 & Exh. 8.)  Plaintiff then received a letter from Dr. Farnie informing him of his dismissal from the Residency Program due to his academic performance and lack of competency. (*Id.* ¶ 20 & Exh. 9.)  Plaintiff was allowed to appeal his dismissal both to an academic review committee and to the dean, and both affirmed his dismissal.  (*Id.* ¶¶ 23, 26.)  In short, Plaintiff was notified of the reasons for his dismissal and was provided "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deem[ed] the proper context.'"  *See Horowitz*, 435 U.S. at 86 (quoting *Goss*, 419 U.S. at 584).  Thus, whether judged by the standard applied to academic dismissals or that for disciplinary dismissals, Plaintiff received sufficient due process.

As to Plaintiff's equal protection claim, Plaintiff asserts that he was denied the additional procedures afforded disciplinary dismissals and conclusorily asserts that "[n]on-disabled students facing the same or similar allegations have not been subjected to similar treatment."  (Orig. Compl. ¶¶ 40, 41.)  However, this claim does not even meet the plausibility standard set forth in *Twombly* – *i.e.* that Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  Rather, the facts in the complaint allege that, subsequent to receiving negative performance reviews in a rotation, Plaintiff was dismissed from the Residency Program because he

"lack[ed] the minimum competencies" and his "skills and abilities [were] well below the level required for an Internal Medicine Resident."  (Orig. Compl. Exh. 9.)  This same rationale also supported providing him the appeal process afforded to "Academic Actions" rather than the process for "Non-Academic Actions," which include "unethical conduct, scholastic dishonesty, [or] theft." (*Id*. Exh. 10 at 12, § Q.1.)  There is not a single alleged fact that plausibly suggests that Plaintiff was dismissed for disciplinary reasons but afforded the review procedures for "Academic Actions" due to his alleged disability, or that similarly-situated, non-disabled students were treated differently.

Furthermore, the Supreme Court has made clear that equal protection claims based on allegations of disability discrimination are governed by the "minimal 'rational-basis' review."  *See Garrett*, 531 U.S. at 366 (citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985)).  "[T]he State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 367 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  As stated above, Plaintiff's own allegations make clear that there was a rational basis for his dismissal and for providing him the review procedures for "Academic Actions." In short, Plaintiff has failed to state an equal protection claim.

F.    Plaintiff's Breach Of Contract Claim Is Barred By Sovereign Immunity.

Plaintiff's breach of contract claim also fails on immunity grounds.  Although the State waives immunity *from liability* when it contracts with a private party, the State does not waive immunity *from suit* for breach of contract claims.  *Gen. Servs. Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001).  "[A] private citizen must have legislative consent to sue the State on a breach of contract claim."  *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997).  Moreover, the Texas Supreme Court has unequivocally stated that "it is the Legislature's sole

*Defendants' Motion to Dismiss*                                                                    14

province to waive or abrogate sovereign immunity." *Tex. Nat. Res. Cons. Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) (citing *Federal Sign*, 951 S.W.2d at 409).

Here, Plaintiff did not have legislative consent to sue any of the Defendants on his breach of contract claim.  Thus, that claim should be dismissed.  Nor can Plaintiff state a breach of contract claim against Dr. Farnie in his individual capacity, as Dr. Farnie was not Plaintiff's employer and is not alleged to have been in contractual privity with Plaintiff in any event.  *See Norris v. Housing Auth. of City of Galveston*, 980 F.Supp. 885, 892-92 (S.D. Tex. 1997) (dismissing breach of contract claims brought against members of employing Board of Commissions in their individual capacities for lack of privity).

## V.    CONCLUSION

For the foregoing reasons, the majority of Plaintiff's claims are barred by sovereign immunity and the Eleventh Amendment.  The reminder should be dismissed for failure to state a claim for which relief can be granted.  Defendants, therefore, respectfully request that this Court grant their motion and dismiss Plaintiff's claims.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Litigation

DAVID MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

*Defendants' Motion to Dismiss*                                                                                    15

/s/ Darren G. Gibson
**DARREN G. GIBSON**
Attorney-In-Charge
Texas Bar No. 24068846
Southern District No. 1041236
Darren.Gibson@oag.state.tx.us
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

**ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of *Defendants' Motion to Dismiss* was filed via the *CM/ECF system* on January 24, 2011, and mailed certified mail, return receipt requested, to:

Michael Ekizian
7575 Kirby Drive #2422
Houston, Texas 77030
*Pro Se Plaintiff*


/s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General